UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

SURGICAL SPECIALISTS OF GREATER
NEW YORK as authorized representative of
J.M.,

Civil Action No. 21-cv-10982

Plaintiff,

- against -

**COMPLAINT**

UMR a/k/a UMR, INC., a division of
UnitedHealthcare, UNITEDHEALTHCARE
INSURANCE COMPANY,

Defendants.
------------------------------------------------------------------X

Plaintiff, SURGICAL SPECIALISTS OF GREATER NEW YORK ("Plaintiff" or "SSGNY") as authorized representative of J.M. ("Patient"), by and through its attorneys, Stein Adler Dabah & Zelkowitz LLP and Drachman Katz LLP as and for its Complaint against defendant, UMR a/k/a UMR, INC., a division of UnitedHealthcare ("UMR") and UNITEDHEALTHCARE INSURANCE COMPANY ("UHC" together, "Defendants"), states as follows:

**NATURE OF ACTION**

1.   This is an action arising under the laws of the United States, specifically the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., for Defendant's wrongful denial/underpayment of Patient's health insurance benefits.

**PARTIES**

2.   At all material times, SSGNY is a multi-specialty medical surgical practice of highly trained and experienced academic surgeons, and other related healthcare practitioners, in the County of New York in the State of New York, located at 1060 Fifth Avenue New York, New

York 10128.  Plaintiff's doctors perform complex, critical, often lifesaving, surgeries in emergency situations, and often referred by other surgeons.

3. UMR, Inc. ("UMR") is a third party administrated that is hired by employers to help ensure that claims are paid correctly.  UMR is not an insurance company; however, UMR is a UnitedHealthCare Company and UMR's stated goal is to "keep health care costs to minimum."

4. Upon information and belief, UHC is primarily engaged in the business of providing and/or administering health care plans or policies

5. Upon information and belief, Defendants are primarily engaged in the business of providing and/or administering health care plans or policies in the state of New York.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).  The insurance policy at issue was provided to the employer of Patient and is governed by ERISA, 29 U.S.C § 1001 et seq.

7. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) provides for nationwide service of process.  Upon information and belief, Defendant is a resident of the United States and subject to service in the United States, and this Court therefore has personal jurisdiction over it.

8. All conditions precedent to the institution of this action, i.e., administrative appeals have occurred, been performed, and have been exhausted.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) in that this is the district in which a substantial amount of the events complained of herein occurred.  Moreover, Defendants are authorized to do business in the State of New York, advertises and promotes its services in the State of New York, were present and engaged in significant activities in the State of New York to sustain this Court's exercise of *in personam* jurisdiction.

**FACTUAL ALLEGATIONS**

10. At all material times, Patient received health insurance coverage by way of an ERISA governed employee welfare benefit plan (the "Plan").

11. On April 22, 2019, Patient was undergoing surgery at Lenox Hill Hospital for a resection of colon cancer; planned exposure of the abdominal wall; resection of excess abdominal wall fat and pannus; and an anterior left fasciocutaneous flap/component separation to complete the mobilization of the abdominal wall.

12. During the surgery, and after the resection of the very large implant of the abdominal wall, the operating surgeons identified multiple incisional hernias during the dissection of the subcutaneous tissue.

13. The surgical team realized that Patient, a then sixty-four (64) year-old, obese women, required an emergency intraoperative "call for help" from a specialized surgeon in order to treat a life-threatening condition from the incisional hernias.

14. Dr. Panagiotis Manolas of SSGNY, a colorectal surgeon on call at Lenox Hill Hospital, was called in on emergency basis.

15. Dr. Manolas emergently performed a necessary bilateral posterior fasciocutaneous flap with mobilization of the transversus fascia and creation of fasciocutaneous flap after transversus release.

16. This emergency intraoperative intervention was necessary to ensure that Patient had a successful surgical procedure.

17. This call for help occurred <u>during surgery</u>, in response to unexpected complications and discoveries by the medical team while the surgery was already underway. As Patient was under anesthesia, she had no ability to exercise any choice in which physicians would treat her.

18. Patient had no prior knowledge SSGNY's services would be necessary, and she was in no position to choose a provider at such time and to determine whether such provider participates in her insurance. Since the medical necessity of this procedure is not in question, this procedure must be viewed as an emergency, and processed under the applicable hold harmless clause in accordance with Patient's policy and applicable state law for emergency intraoperative services claims.

19. The surgery was successful and Plaintiff provided reasonable, medically necessary and life-saving services to Patient.

20. Subsequently, a Health Insurance Claim Form was submitted to UMR or its agent for an amount totaling $287,862.00 for the treatment/services/supplies discussed above.

21. The charges for the services performed by Plaintiff and its medical staff are in line with other medical providers and specialists in their geographic area.

22. Defendant, however, remitted $7,480.42, for the above-referenced treatment.

23. Critically, Defendant drastically underpaid the medical providers at SSGNY by either (a) not remitting any payment for certain CPT codes; (b) entirely overlooking that unexpected complications arose whilst Patient's surgery was underway, that Patient was under extremely precarious conditions, was unconscious and under anesthesia, and was in no position to choose a provider at such time and to determine whether such provider participates in her insurance, and (c) remitting a nominal payment drastically *under* the 80th percentile of Fair Health for other CPT Codes.

24. Despite numerous and thorough appeals, Defendant has failed to remit the correct amount due, largely without reasonable explanation or justification as to the basis for denial.

25. Indeed, during the course of appeals process, UMR claimed that "Provider negotiated discount," was for $7,480.42, however, SSGNY never negotiated any discount with UMR nor with any representative of UMR. UMR's statement is false in its entirety and furthermore raises questions as to the remaining, proposed bases for the severely deficient allowable amount.

26. Defendant underpaid its reimbursement of all services and accordingly, Plaintiff brings this action for the recovery of the balance of benefits due to Patient under the Plan, in the amount no less than $280,381.98 for the treatment rendered to him by Plaintiff.

27. As the surgery involved urgent emergency care, pursuant to 29 CFR § 2560.503-1(b)(4), Plaintiff is permitted to act as the authorized representative of Patient, and possesses the legal authority to recover the benefits from UHC due to Patient.

## AS AND FOR A FIRST CAUSE OF ACTION
*(Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))*

28. Plaintiff repeats and realleges the allegations in the foregoing paragraphs, as if fully set forth herein.

29. ERISA § 502(a)(1), codified at 29 U.S.C. § 1132(a)(1)(B), provides a cause of action for a beneficiary or participant seeking benefits due payment under the terms of an ERISA governed plan.

30. Defendant improperly denied benefits due to Patient under the terms of the Plan.

31. Critically, Defendant drastically underpaid the medical providers of Surgical Specialist by either (a) not remitting any payment for certain CPT codes; (b) remitting payment drastically under the 80th percentile of Fair Health for other CPT Codes, and (c) inexplicably basing its denial of appeals based upon the scheduled complex surgery for resection of colon

cancer, entirely overlooking that unexpected complications requiring emergency surgery arose whilst the scheduled surgery was underway.

32. As a result of Defendant's breach, Plaintiff is entitled to damages, including but not limited to, costs, expenses, and attorneys' fees.

**AS AND FOR A SECOND CAUSE OF ACTION**
*(Breach of Fiduciary Duty and Co-Fiduciary Duty Under 29 U.S.C. § 1132(a)(3), Under 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a))*

33. Plaintiff repeats and realleges the allegations in the foregoing paragraphs, as if fully set forth herein.

34. 29 U.S.C. § 1132(a)(3)(B) provides a cause of action by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

35. Plaintiff seeks redress for Defendant's breach of fiduciary duty and/or Defendant's breach of co-fiduciary duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a).

36. 29 U.S.C. § 1104(a)(1) imposes a "prudent man standard of care" on fiduciaries.

37. Specifically, a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments

governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. *See* 29 U.S.C. § 1104(a)(1).

38. 29 U.S.C. § 1105(a) imposes liability for breaches of co-fiduciaries.

39. Specifically, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) ["prudent man standard of care"] of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. *See* 29 U.S.C. § 1105(a).

40. Here, when Defendant acted to deny payment for the medical bills at issue herein, and when it responded to the administrative appeals initiated by Plaintiff, it was clearly acting as a "fiduciary" as that term is defined by ERISA § 1002(21)(A) because, among other reasons, Defendant acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan at issue as described above.

41. Here, Defendant breached its fiduciary duties by: (1) participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) failing to make reasonable efforts under the circumstances to remedy the breach of such other fiduciary; and (3) wrongfully withholding money belonging to Plaintiff.

**AS AND FOR A THIRD CAUSE OF ACTION**
*(Compelling the Production of the "Administrative Record" and for Recovery of Administrative Record Production Failure Penalty Pursuant to ERISA, 29 U.S.C. § 1024(B), 29 U.S.C. § 1132(c)(1), 29 C.F.R. § 2575.502c-1, and 29 C.F.R. § 2560.503-1(h)(2)(iii))*

42. Plaintiff repeats and realleges the allegations in the foregoing paragraphs, as if fully set forth herein.

43. By letter dated June 28, 2021, Plaintiff, by and through its legal counsel, asked UMR to provide the administrative record and/or germane documentation in relation to Patient's claim, mainly (but not entirely) to learn UMR's purported reasons for claim underpayment so that Plaintiff could contest same in an educated fashion (pre-suit and, only if need be, in suit).

44. Defendants, however, shirked their legal and ERISA required obligations to produce administrative and/or germane records.

45. As a result of Defendants' declining to produce requested administrative records, Plaintiff, pursuant to 29 C.F.R. § 2575.502c-1, is entitled to an award of a civil penalty in the amount of $110.00 per day, as of June 28, 2021.

46. As of the date of this filing, one-hundred and seventy-seven (177) days have passed without Defendants' satisfaction of the administrative record and/or germane record requests made in the aforementioned letter regarding Patient's claim. Accordingly, as of the filing date of this Complaint, the $110.00 per day administrative penalty totals $19,470.00.

47. The $110.00 daily penalty will continue to accrue until such time that Defendants oblige the germane documentation and/or information requests (e.g., a certified copy of the policy plan document, payment rate schedules, formulas, etc.) set forth in the June 28, 2021 letter.

48. Plaintiff has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendants' wrongful withholding of the administrative record and/or

germane documentation, including but not limited to, claim and appeal decision-making paperwork.

49. As a further result of Defendants' refusal to produce the administrative record and/or germane documentation, Plaintiff has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover reasonable attorneys' fees and costs pursuant to Title 29, United States Code Section 1132(g)(1) or as otherwise awardable.

50. By reason of the foregoing, Plaintiff is entitled to: (a) a Court order compelling Defendants to produce the outstanding administrative record and/or germane documentation; (b) an award to Plaintiff of the administrative record production failure penalty incurred by Defendants pursuant to 29 C.F.R. § 2575.502c-1, and 29 C.F.R. § 2560.503-1(h)(2)(iii); and (c) an award to Plaintiff of attorneys' fees (pursuant to Title 29, United States Code, Section 1132(g)(1)) and costs incurred bringing this action.

## TRIAL COUNSEL DESIGNATION

Jacob E. Lewin, Esq. of Stein Adler Dabah & Zelkowitz LLP are hereby designated as Trial Counsel in the above matter.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgments against Defendants as follows:

A. On the First Cause of Action, damages including, but limited to, past-due contractual benefits as set forth in the Plan, but in no event less than $280,381.98.

B. On the Second Cause of Action, damages including, but limited to, past-due contractual benefits as set forth in the Plan, but in no event less than $280,381.98, as well as awarding Plaintiff declaratory relief providing that Defendants (a) have wrongfully denied

Plaintiff's claims for benefits; (b) intentionally acted in bad faith; and (c) intentionally engaged in tactics of delay and obfuscation.

  C. On the Third Cause of Action, a Court order compelling Defendants to produce the outstanding administrative record and/or germane documentation; an award to Plaintiff of the administrative record production failure penalty incurred by Defendants pursuant to 29 C.F.R. § 2575.502c-1, and 29 C.F.R. § 2560.503-1(h)(2)(iii); and (c) an award to Plaintiff of attorneys' fees (pursuant to Title 29, United States Code, Section 1132(g)(1)) and costs incurred bringing this action.

  D. Costs and expenses, including attorneys' fees;

  E. Interest; and

  F. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
    December 22, 2021

            STEIN ADLER
            DABAH & ZELKOWITZ LLP

            By: _____
              Jacob E. Lewin, Esq.
             1633 Broadway, 46th Floor
             New York, New York 10019
             (212) 867-5620


            DRACHMAN KATZ LLP


            By: */s/ David Katz*
              David Katz, Esq.
             115-06 Myrtle Avenue
             Richmond Hill, New York 11418
             (718) 407-2411

             *Attorneys for Plaintiff*